UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

```
*********************************************
CHRISTOPHER C. BITTNER and           *
CAROL BITTNER,                       *
                                     *
             Plaintiffs              *
v.                                   *
                                     *    C.A. NO. 04-11417-RCL
FRANK WILLIAMS, THEODORE A.          *
SAULNIER, in his capacity as CHIEF OF THE *
TISBURY POLICE DEPARTMENT, and       *
THE TOWN OF TISBURY,                 *
                                     *
             Defendants              *
*********************************************
```

### PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO BIFURCATE

Plaintiffs Christopher and Carol Bittner respectfully submit the following in opposition to Defendants' Motion for Bifurcation.

### Factual and Procedural Background

This case involves allegations of the violation of the plaintiff's civil rights when he was wrongfully arrested by Defendant Frank Williams on June 25, 2002.

In June 2002, plaintiff Christopher Bittner was the owner and operator of a furniture restoration store on Main Street in Tisbury, Massachusetts, where he had moved from the greater New York area. After struggling for fifteen (15) years and through multiple hospitalizations caused by bi-polar disorder, Mr. Bittner had regained the ability to function, opening his own business and leaving SSDI. He and his wife had moved to Martha's Vinyard in search of a more pastoral setting than suburban New York.

On June 25, 2002, while on the street in front of his business storefront, plaintiff Bittner noticed a woman laying unconscious in the middle of the street. [Verified Complaint, ¶ 6] Mr. Bittner attempted to assist the woman, while coordinating with another bystander, who called 911. [Verified Complaint, ¶ 6]

When the woman regained consciousness and attempted to walk away, plaintiff Bittner, recognizing (from his own personal medical experiences)that the woman had a seizure and concerned for her health and safety, urged the woman not to get up, but to remain until EMT's, who had been summoned, came and examined her. [Verified Complaint, ¶ 7]

As Mr. Bittner was doing so, Defendant Tisbury Police Officer Frank Williams arrived. Upon arriving and before he had the chance to speak with anyone or determine what had happened, defendant Williams shouted "Stop!". [Verified Complaint, ¶ 8] Defendant Williams then demanded, without explanation, that plaintiff Bittner provide identification. [Verified Complaint, ¶ 10] Mr. Bittner asked why and defendant Williams responded, "If you don't, I consider it disorderly conduct." [Verified Complaint, ¶ 10]

Plaintiff Bittner expressed his disbelief at this statement and asked for the defendant Officer's badge number. [Verified Complaint, ¶ 12] Defendant Williams responded by saying, "I don't have to put up with this shit", handcuffed and arrested Mr. Bittner. [Verified Complaint, ¶ 12] Defendant Williams then threw the plaintiff onto the hood of his police cruiser and searched the plaintiff, humiliating him publicly. [Verified Complaint, ¶ 12]

Defendant Williams, having arrested the plaintiff, booked, jailed and charged the plaintiff with disorderly conduct. [Verified Complaint, ¶ 13] The charges against the plaintiff thereafter were dismissed by the court. Plaintiff alleges that defendant Williams brought these criminal charges without probable cause, with malice and with the intent to cover up his wrongful arrest of Plaintiff Bittner, and to prevent and intimidate Plaintiff Bittner from seeking redress. [Verified Complaint, ¶ 14]

Based on the discovery the plaintiffs have been able to obtain, defendant Williams, a veteran of over twenty years on the Tisbury Police force, has had six complaints made against him, all made within two years of this incident.  Three of the complaints provided to the plaintiff were made in August of 2002, the same summer defendant Williams arrested the plaintiff.  This suggests that defendant Williams had some problem that had erupted in the summer of 2002 that the defendant Town should have been aware of, had it been properly supervising defendant Williams.

Thus, contrary to the presumption underlying the defendants' motion to bifurcate, this case does not involve a simple arrest that is separate and independent from a separate *Monell* failure to discipline a rogue officer.  Rather the *Monell* claim is based upon a lack of supervision that allowed defendant Williams to abuse his power, not just with the plaintiff , but with at least three other civilians in the same summer period.[1]

Consequently, the factual basis for the claims the defendants seek to bifurcate are not easily separable.  With regard to the *Monell* claim, plaintiff is developing evidence that the town and Chief knew that defendant Williams was abusing his police powers during the summer of 2002.  Despite knowing that such conduct was occurring, the defendant Town and its defendant Chief of Police made no real effort to supervise or discipline defendant Williams.

By moving to bifurcate, defendants are also seeking to block Plaintiff from getting access to all the records the Town has about prior complaints of misconduct against the defendant officer, other Tisbury officers and the defendant police chief's failure to act in these other

---

[1] Based upon independent investigation, plaintiffs suspects the problems with Officer Williams extend far beyond the three complaints provided by the defendants and the arrest of Mr. Bittner, and plaintiffs expect to be filing a motion to compel if further discovery is not forthcoming promptly.

instances. Further, despite the absence of complete discovery on the *Monell*-related claims, defendants are seeking bifurcation of the trial of this case.

## Argument

**A.    Defendants Have Not Met Their Burden of Showing that Bifurcation is Necessary to Avoid Prejudice or That It Would Serve the Interests of Judicial Economy and Efficiency**

Under Rule 42(b) of the Federal Rules of Civil Procedure, the burden is on the moving party to demonstrate that bifurcation is justified. *McRae v. Pittsburgh Corning Corp.*, 97 F.R.D. 490 (E.D. Pa. 1983); *Fuji Mach. Mfg. Co., Ltd. v. Hover-Davis, Inc.*, 982 F. Supp. 923 (W.D.N.Y. 1997); *Industrias Metalicas Marva, Inc. v. Lausell*, 172 F.R.D. 1, 2 (D.P.R. 1997). Bifurcation is only appropriate when defendants can demonstrate that it would further convenience, "avoid prejudice" or be "conducive to expedition and economy". F.R.C.P. Rule 42

Defendants contend, in arguing for bifurcation (1) that if they are successful at the first trial stage – which they propose would be on individual liability – a second stage of trial would not be necessary; (2) that bifurcation would focus the issues on the alleged acts and omissions of the particular individuals who must stand trial, and (3) that bifurcation will prevent the individual defendant from being prejudiced by the jury's consideration of *Monell* evidence relating to prior lawsuits and prior Internal Affairs investigations. Defendants have not met their affirmative burden of showing that these interests would be served by bifurcation.

A general principal that sometimes might apply does not require application here as the facts in this case do not warrant bifurcation.

1.   **The defendants have not shown reason to exclude information of other complaints against the defendant Officer.**

In seeking to establish lack of probable cause for the stop and arrest on June 25, 2002, the plaintiff is entitled to offer evidence that will prove that defendant Williams was operating in an environment where he did not fear that he would be held accountable for his conduct. To do so, the plaintiff must be allowed to prove that the culture in which defendant Williams functioned was one of disrespect for the rights of citizens, where defendant Williams knew that he would not be punished for his illegal arrest of the plaintiff.

Evidence of other misconduct – what the defendants call "propensity evidence" – may well be deemed admissible against the individual defendants for reasons other than "propensity" -- to prove motive, opportunity, intent, plan, knowledge or absence of mistake or accident. Fed. R. Evid. 404 (b)  Such evidence of other misconduct here goes to defendant Williams' state of mind and intent at the time he arrested the plaintiff. [See *McCabe v Mach*, 908 F3d 1333 (1st Cir., 1996), admitting prior acts of institutional violence because the probative value of this testimony outweighed any prejudicial effect it might have had, *Senra v Cunningham*, 9 F3d 168, 171 (1st Cir., 1993), which found prior incidents of intoxication and domestic disturbances admissible under Fed. R. Evid. 404 (b), and *Gytan v. Kapus*, 181 F.R.D. 537 (N.D.Ill. 1998) where evidence of other disciplinary complaints were admitted to show intent.]

Additionally, such "propensity" evidence may well be relevant to the issue of whether defendant Williams acted with probable cause or with a reasonable belief that he had the right to stop or arrest the plaintiff. The "facts" upon which he allegedly made the decision to stop or arrest may be colored by callous indifference to constitutional rights. See *Guiterrez-Rodriguez v Cartagena*, 882 F2d 553, 559 (1st Cir., 1989)  More relevant, in this case, the three other

incidents in the summer of 2002 that the defendants have so far disclosed, or other incidents in the same time period, may be very probative evidence of defendant Williams' state of mind at the time he arrested Mr. Bittner for attempting to assist a woman in distress.

Defendant Williams' state of mind is not something that suddenly arose out of a vacuum. What might otherwise be misperceived as a random or isolated act may actually be part of a pattern of conduct. That is what is suggested here. Evidence of other conduct with respect to civilians throughout the summer of 2002 is thus probative of motive, intent and lack of good faith in dealing with the plaintiff. See *Jay Edwards, Inc., v New England Toyota Distributor, Inc.*, 708 F2d 814, 824 (1st Cir., 1983)

> 2. **Bifurcation Will Not Significantly Limit the Likelihood of Trial on *Monell* Issues**

If bifurcation is granted, a second trial stage may be necessary even if the first trial stage results in a defense verdict. This is so because defendants Williams has raised qualified immunity defenses, while the Town cannot avail itself of any such defense. *Owen v. City of Independence*, 445 U.S. 622 (1980). If the proposed first stage of trial results in a defense verdict on qualified immunity grounds, a second stage of trial would still be necessary as the Town can be held liable even if its officer acted in good faith. [See *Prue v. City of Syracuse*, 26 F.3d 14 (2nd Cir. 1994); *Barrett v. Orange County Human Rights Commission*, 194 F.3d 341 (2nd Cir. 1999) (holding that municipality may be found liable even in the absence of individual liability), citing *Anderson v. Atlanta*, 778 F.3d 678 (11th Cir. 1985) and *Garcia v. Salt Lake County*, 768 F.2d 303 (10th Cir. 1985)]

Here the Town failed to take any disciplinary action against officer Williams for any of the acknowledged complaints made against him during the three month period of the summer of

2002.  The defendants are not correct in asserting that " a finding in Officer Williams' favor would render the municipal and supervisor claims moot." simply because the jury may find the defendant Williams did not violate the plaintiff's civil rights in the underlying June 25, 2002 arrest.

Indeed, a jury could find that, while defendant Williams was entitled to qualified immunity because the lack of supervision by the defendant municipality led him to believe his conduct in abusing male citizens in circumstances like his confrontation with the plaintiff, the same jury may well find the defendant municipality deliberately indifferent to the plaintiff's civil rights in its failure to train and supervise defendant Williams properly.

Certainly all can agree that the interests of judicial economy and efficiency are best served by one trial rather than two separate trials.  The prospect of two trials if this case is bifurcated is even more likely given the facts in this case.  A pattern of abuse by Officer Williams is present and the Town failed to take any action to curtail his abuses, the type of conduct that is the product of a failure to discipline and supervise rather than the isolated action of a rogue officer.

> 3. **There Is No Basis To Conclude that the Individual Defendant Will Be Prejudiced by a Jury's Consideration of *Monell*-Related Evidence**

The defendants contend that evidence that might be admissible on the *Monell* failure to supervise claim, such as "propensity evidence", might be prejudicial to defendant Williams.  The Court in *Medina v. City of Chicago*, 100 F. Supp. 2d 893 at 897 (N.D. Ill. 2000), addressed this concern, rejecting the argument for bifurcation that defendants urge here, explaining that any potential prejudice can be cured through appropriate limiting instructions:

> Though the Court is cognizant of the possibility of prejudice to the individual officers if the claims are tried together, our system generally trusts jurors to understand and follow limiting instructions regarding consideration of evidence against some defendants and not others -- even in criminal cases, where a person's liberty is at stake. But more

> importantly, at this point neither the parties nor the Court has the least idea what evidence actually would be offered at trial on the Monell claim or just how prejudicial that evidence might actually be to the officers . . . The Court finds it hard to imagine how a finding of likely unfair prejudice can be made in this or any case without some indication of what the actual prejudice is likely to be -- a showing that defendants have not made, and quite frankly cannot make, at this point in the litigation.

Here, as in *Medina,* the Court should trust jurors to understand and follow whatever limiting instructions might be appropriate. Here, as in *Medina, Monell* discovery has not been completed, as the defendants have redacted records to hold back the names of individuals who filed the complaints against Officer Williams without explanation, so neither the parties nor the Court knows what evidence will be offered at trial on the *Monell* claim or just how unduly prejudicial that evidence might be to the officers, or even whether there is any evidence that would be more prejudicial than probative.

On the other hand, the very evidence the defendants suggest would be prejudicial to the individual defendant, defendant Williams, may actually be admissible against him with respect to claims against him as an individual defendant. Thus bifurcation would not serve judicial economy, as it would likely result in two trials with the same evidence offered twice, once in each trial.

Evidence of a municipal policy reflected in other similar acts of misconduct is directly relevant to showing that the conduct of the individual officer was knowingly wrongful. The conduct of individual defendant does not arise in a vacuum. The conduct may be occurring in an environment in which superiors will support wrongful conduct by not holding them accountable for repeated misdeeds or harassment. This appears to be the case here. Thus he motion to bifurcate should be denied.

**4.     The Requested Material Is Admissible Independent Of Any *Monell* Issues**

Discovery provided by the defendants to date is incomplete. The defendants have not provided responses to depositions duces tecum and have failed to provide the plaintiff with un-redacted copies of the complaints against officer Williams. This failure of the defendants to provide full discovery may lead to a motion to compel.

Apart from the *Monell* issues, plaintiff has an independent basis for the evidence that defendants would seek to exclude from the initial trial in a bifurcated proceeding. Evidence of other wrongs may be admissible against the individual defendants under Rule 404(b) of the Federal Rules of Evidence. See *Huddleston v. United States*, 485 U.S. 681, 688-89 (1988) ("Congress was not nearly so concerned with the potential prejudicial effect of Rule 404(b) evidence as it was with ensuring that restrictions would not be placed on the admission of such evidence") In this case the defendants' motives and intent, not just in arresting the plaintiff on June 25, 2002, but in his subsequent charging and prosecuting of the plaintiff are all at issue.

Plaintiff alleges that defendant was motivated by a desire to intimidate him and to cover-up the unconstitutional and tortious actions of June 25, 2002. There is a basis for such an allegation in the other civilian complaints made during the summer of 2002, that seem to indicate a pattern of "retaliation" against motor cyclists by defendant Williams. As such, plaintiff must be allowed to gather evidence through discovery that would be admissible to prove defendant Williams' motive, intent, plan, knowledge, and/or the absence of a mistake or accident. [See *Commonwealth v. Porter*, 659 F.2d 306, 320 (3rd Cir. 1981)(en banc), cert. denied, 458 U.S. 1121 (1982); *Wilson v. City of Chicago*, 6 F.3d 1233 (7th Cir. 1993) (evidence of prior use of force admissible to show intent, opportunity and plan); *Kopf v. Skyrm*, 993 F.2d 374 (4th Cir.

1993); *Ismail v. Cohen*, 899 F.2d 183 (2nd Cir. 1990), *Carson v. Polley*, 689 F.2d 562 (5th Cir. 1982) (evidence of prior acts of racially motivated misconduct probative of defendant's state of mind); *Miller v. Poretski*, 595 F.2d 780 (D.C. Cir. 1978) *Borenstein v. City of Philadelphia*, 595 F. Supp. 853 (E.D. Pa. 1985)]

The information at issue is also admissible as it relates to defendants' filing of false reports, regarding the June 25, 2002 arrest. Under Rule 608(b) of the Federal Rules of Evidence, specific instances of conduct by a witness, if probative of untruthfulness, may be inquired into on cross examination. See *United States v. Fortes*, 619 F.2d 108 (1st Cir. 1980). As other false reports by the defendants would be admissible on issues of credibility, plaintiff is entitled to discovery into the instances he has been able to identify in which false reports may have been prepared, *Haynes v. Coughlin*, 79 F.3d 285 (2nd Cir. 1996) (false claims and reports admissible on credibility of corrections officer); *Deary v. City of Gloucester*, 9 F.3d 191 (1st Cir. 1993), and to offer this evidence at trial against defendant Williams.

Thus this evidence contained in personnel or IAD files, while admissible against the defendant municipality, would also be admissible against defendant Williams. Accordingly, bifurcation would create redundant dual trials.

**Conclusion**

At this point, there is no reason why this Court should exercise its discretion and bifurcate issues where the evidence is likely to be admissible in both parts of the bifurcated trial. The defendant's here have failed to meet their burden of showing whether there even is any "propensity" evidence, let alone that any "propensity" evidence would be more prejudicial than probative. At this point, it appears that the evidence the defendants seek to exclude against defendant Williams through bifurcation would be highly probative. Where evidence admissible in the *Monell* claim is likely to be admissible also against the individual defendant, Frank Williams, defendants' motion for bifurcation should be denied.

|  |  |
|---|---|
|  | Respectfully submitted,<br>Plaintiffs by counsel, |
| Date: March 15, 2006 | /s/ Andrew M. Fischer<br>Andrew M. Fischer<br>BB0# 167040<br>Andrew J. Brodie III<br>BBO# 661269<br>JASON & FISCHER<br>47 Winter Street<br>Boston, MA 02108<br>(617) 423-7904 |

bittner\oppmobif